## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

The State of DELAWARE,

               *Plaintiff*,

               *Ex rel.*

WILLIAM SEAN FRENCH,

               *Plaintiff-Relator*,

      v.

CARD COMPLIANT, LLC, *et al.*,

               *Defendants*.

Case No. 1:14-cv-00688

---

## STATE OF DELAWARE AND PLAINTIFF-RELATOR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND

DATE: June 30, 2014

Of Counsel:
Reuben A. Guttman
**GRANT & EISENHOFER P.A.**
1920 L Street, N.W., Suite 400
Washington, DC 20036
Telephone: (202) 386-9500
Facsimile: (202) 386-9505

Douglas R. Sprong
Christopher A. Hoffman
**KORIEN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Attorneys for Plaintiff-Relator*

Thomas E. Brown (No 3278)
Edward K. Black (No. 5302)
Stephen G. McDonald (No. 4806)
**STATE OF DELAWARE**
**Delaware Department of Justice**
820 North French Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 577-8400
*Attorneys for Plaintiff State of Delaware*

Stuart M. Grant (No. 2526)
Mary S. Thomas (No. 5072)
Justin K. Victor (No. 5705)
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100
*Attorneys for Plaintiff-Relator*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I.      NATURE AND STAGE OF PROCEEDINGS ................................................. 1

II.     SUMMARY OF ARGUMENT ........................................................................ 1

        A.      THE STATE'S ABANDONED PROPERTY CLAIM DOES NOT "ARISE UNDER"
                FEDERAL LAW .......................................................................................... 2

        B.      THERE ARE NO "DISPUTED AND SUBSTANTIAL QUESTIONS OF FEDERAL LAW" ..... 4

III.    STATEMENT OF FACTS ............................................................................... 6

IV.     ARGUMENT ................................................................................................... 8

        A.      STANDARD OF REVIEW ON A MOTION TO REMAND ..................................... 8

                1.      Strict Judicial Scrutiny Of This Removal Is Required ................................. 9

                2.      Jurisdiction Is Determined Under The Well-Pleaded Complaint Rule ...... 10

        B.      THE CLAIMS ASSERTED  IN THE COMPLAINT ARE NOT CREATED BY AND DO
                NOT "ARISE UNDER" FEDERAL COMMON LAW ...................................... 10

                1.      The State's Claim To Abandoned Property Is Not Created By Federal
                        Law ..................................................................................................... 11

                2.      No Right Or Immunity Created By Federal Law Is An Element Of
                        The Asserted Cause Of Action .............................................................. 13

        C.      THE ALLEGEDLY DISPUTED AND SUBSTANTIAL QUESTIONS OF FEDERAL LAW
                ARE ACTUALLY STATE LAW QUESTIONS ................................................ 15

                1.      A "Holder" Of An Unredeemed Value On A Gift Card Is Liable To
                        The State .............................................................................................. 16

                2.      Escheatable Property Is Not Limited To "Debt" ..................................... 17

                3.      Unincorporated Delaware Businesses Are Liable For Escheat To The
                        State ..................................................................................................... 18

        D.      THE COURT SHOULD DECLINE DEFENDANTS' INVITATION TO CREATE NEW
                FEDERAL COMMON LAW. ......................................................................... 19

V.      CONCLUSION ............................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................12, 13

*Batoff v. State Farm Insurance Co.,*
    977 F.2d 848 (3d Cir. 1992).....................................................................................8

*Beneficial Nat'l Bank v. Anderson,*
    539 U.S. 1 (2003)..............................................................................................5, 10

*Boyer v. Snap-on Tools Corp.,*
    913 F.2d 108 (3d Cir. 1990)....................................................................................9

*Caterpillar Inc. v. Williams,*
    482 U.S. 386 (1987).............................................................................................10

*Delaware v. New York,*
    507 U.S. 490 (1993)........................................................................................ passim

*Franchise Tax Bd. v. Const. Laborers Vacation Trust,*
    463 U.S. 1 (1983)..............................................................................10, 13, 14, 15

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mgf.,*
    545 U.S. 308 (2005).....................................................................................9, 15, 20

*Gully v. First Nat. Bank,*
    299 U.S. 109 (1936)................................................................................12, 14, 15

*Gunn v. Minton,*
    133 S. Ct. 1059 (2013)..................................................................................... passim

*Kokkonen v. Guardian Life Ins. Co.,*
    511 U.S. 375 (1994)...............................................................................................8

*Merrell Dow Pharm. Inc. v. Thompson,*
    478 U.S. 804 (1986).............................................................................................10

*New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff,*
    669 F.3d 374 (3d Cir. 2012)....................................................................................3

*New York v. Shinnecock Indian Nation,*
    686 F.3d 133 (2d Cir. 2012)....................................................................................9

*Pennsylvania v. New York,*
    407 U.S. 206 (1972).............................................................................................11

*Rasul v. Bush*,
    542 U.S. 466 (2004) ..................................................................................8

*St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.*,
    774 F. Supp. 2d 596 (D. Del. 2011) .....................................................5, 13, 14, 15

*In re Standard & Poor's Rating Agency Litig.*,
    -- F. Supp. 2d ---, 2014 WL 2481906 (S.D.N.Y. June 3, 2014) ..............................9

*Taylor v. Anderson*,
    234 U.S. 74 (1914) ...........................................................................14, 15

*Texas v. New Jersey*,
    379 U.S. 674 (1965) ..................................................................... passim

*Veneruso v. Mount Vernon Neighborhood Health Ctr.*,
    933 F. Supp. 2d 613 (S.D.N.Y. 2013) .......................................................9

## STATUTES

12 *Del. Code* § 1197 .........................................................................1, 16

12 *Del. Code* § 1198 .................................................................... passim

12 *Del. Code* § 1199 ............................................................................5

12 *Del. Code* § 1201 .................................................................2, 4, 16, 17

12 *Del. Code* § 1206 ..........................................................................17

12 *Del. Code* § 1210 ..........................................................................17

28 U.S.C. § 1251(a) ....................................................................4, 17, 18, 19

28 U.S.C. § 1331 ..............................................................................10

28 U.S.C. § 1441(a) ............................................................................8

28 U.S.C. § 1447(c) .........................................................................6, 20

## OTHER AUTHORITIES

16 James Wm. Moore et al., *Moore's Federal Practice* § 107.05 (3d ed. 2012) ...........................9

## I.      NATURE AND STAGE OF PROCEEDINGS

This is a state civil action filed in the Superior Court of the State of Delaware in and for New Castle County pursuant to the Delaware False Claims and Reporting Act, 6 *Del. Code* § 1201 *et seq.* ("DFCRA").   The Complaint, D.I. 1-1, filed June 28, 2013 by Plaintiff-Relator William Sean French, alleges that Defendants schemed to deprive the State of Delaware (the "State") of hundreds of millions of dollars in abandoned property escheatable to the state.   The State, following its own investigation, was granted the right to intervene in the action on March 24, 2014, D.I. 1-4, and the case was unsealed on March 24, 2014, D.I. 1-5.   Defendants filed their Notice of Removal Pursuant to 28 U.S.C. §§ 1331, 1441, 1446 in the District Court for the District of Delaware on May 30, 2014.   D.I. 1.   The State and Plaintiff-Relator (collectively "Plaintiffs") now move for remand.

## II.      SUMMARY OF ARGUMENT

1.      The scheme as asserted in the Complaint involves the sale by certain Delaware businesses of billions of dollars in gift cards.   D.I. 1-1 at ¶ 2.   Under the State's Abandoned and Unclaimed Property Act, 12 *Del. Code* § 1197 *et seq.* ("AUPA"), the unredeemed value of gift cards that remain unused after five years escheat to the State if the owner is unknown and the "holder" of the funds is a business created under Delaware law.   D.I. 1-1 at ¶¶ 3-4.   In order to evade the escheat and keep the abandoned gift card funds themselves, the Delaware businesses named in the Complaint entered into sham contracts with organizations incorporated in states that do not have escheat laws for unredeemed gift card balances, and these organizations then purported to issue and be liable for the gift cards.   *Id.* at ¶¶ 5-6.   The Delaware businesses, however, maintained possession, custody, and control of the gift card funds at all times.   *Id.* at ¶ 5.   Under the State's AUPA, therefore, the Delaware businesses are "holders" of the gift card

funds, 12 *Del. Code* § 1198(7) & (11), and the gift card funds are escheatable to the State, 12 *Del. Code* § 1201.

2.     The Complaint asserts two claims under the DFCRA:  (1) under 6 *Del. Code* § 1201(a)(7), for knowingly making, using, or causing to be made or used, false statements and records to conceal, avoid, or decrease an obligation to pay or transmit money to the State, D.I. 1-1 ¶¶ 411-415; and (2) under 6 *Del. Code* § 1201(a)(4), for failing to deliver or causing to be delivered to the State less property than the amount for which they have a receipt, ¶¶ 416-420. The State and the Relator seek treble damages, civil penalties, and other appropriate remedies. *Id.* at VIII, Prayer for Relief.

3.     Defendants' removal notice offers two arguments to support federal question jurisdiction over the state law claims asserted in the Complaint.  First, Defendants contend that the State's abandoned property claims "arise under" the priority rules most recently reaffirmed in *Delaware v. New York*, 507 U.S. 490 (1993).  D.I. 1 at ¶ 1.  Second, Defendants contend this case presents three "actually disputed and substantial questions of federal common law" that should be decided by a federal court.  D.I. 1 at ¶ 3.  Both contentions are wrong.

## A.     THE STATE'S ABANDONED PROPERTY CLAIM DOES NOT "ARISE UNDER" FEDERAL LAW

4.     With respect to the first issue, the State's abandoned property claim was not created by and does not "arise under" federal common law.  The federal "*Texas v. New Jersey* line of cases" Defendants cite does not create rights to abandoned property.  Those cases create a set of rules whereby states with competing claims to escheat the same property can determine which state's claim is superior.  *Texas v. New Jersey*, 379 U.S. 674, 675 (1965) (resolving "controversy as to which State has jurisdiction to take title to certain abandoned intangible personal property through escheat").  Those rules provide that, first, abandoned property escheats

to "the State of the last known address of the creditor." *Texas*, 379 at 681-82.  The Court found

that "[t]his leaves questions as to what is to be done with property owed persons (1) as to whom

there is no record of any address at all, or (2) whose last known address is in a State which does

not provide for escheat of the property owed them." *Id.*  The Court then adopted a rule that

> the property [would] be subject to escheat by the State of corporate domicile, . . .
> retaining the property for itself only until some other State comes forward with
> proof that it has a superior right to escheat. Such a solution for these problems,
> likely to arise with comparative infrequency, seems to us conducive to needed
> certainty . . . .

*Id.*

5.      As the Supreme Court has explained, the State's right to enforce its AUPA and

escheat property arises under the State's sovereign power, not federal law.  *Delaware*, 507 U.S.

at 497 ("States as sovereigns may take custody of or assume title to abandoned personal

property"); *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 395 (3d Cir.

2012) ("The Supreme Court has long recognized that the sovereign maintains authority over

abandoned property, including the right to escheat the property.") (citing *Texas*, 379 U.S. at 675).

If the State repealed its AUPA, it would have no right to escheat abandoned property under

federal common law.  *See Delaware*, 507 U.S. at 499-500 (noting that a "State whose laws do

not provide for escheat" has no right to escheat under the priority rules).

6.      This case is not a dispute between states.  Consequently, there is no need to

address the merely hypothetical question of whether some other state may have a claim to the

abandoned property at issue here.   If another state were to seek custody of the abandoned

property, it could file a claim in accordance with the State's AUPA (12 *Del. Code* § 1206),

intervene in this action, or file a suit against the State.  None of those alternatives provide *this

Court* with subject matter jurisdiction; rather it would create a claim that is either resolved in

accordance with the express terms of the State's AUPA, or it would create a claim that falls

3

within the original and exclusive jurisdiction of the Supreme Court.  28 U.S.C. § 1251(a) ("The Supreme Court shall have original and exclusive jurisdiction of all controversies between two or more States."); *see Texas*, 379 U.S. at 675 n.1 (noting that case—involving competing escheat rights of four states—fell within Supreme Court's original and exclusive jurisdiction).  Until that happens, the priority rules are simply irrelevant to the determination of which court has jurisdiction over this case.

### B.   THERE ARE NO "DISPUTED AND SUBSTANTIAL QUESTIONS OF FEDERAL LAW"

7.   The three questions identified by Defendants as "disputed and substantial questions of federal common law" are not questions of federal law at all.  They are each questions of state law.

8.   First, Defendants assert that priority depends on who the "debtor" is in this case— the so-called card issuers that are incorporated in other states or the Defendant Delaware businesses that provide the goods and services for which the gift cards are purchased.  D.I. 1 at ¶¶ 12-17.  But the question of who is a "debtor" is not even germane to the State's AUPA.  The important question under the State's AUPA is who is the "holder" that "[has] possession [or] control" over the abandoned property, including "service corporation[s] and every other legal entity incorporated or created under the laws of this State or doing business in this State," that must give it over to the State.  *See* 12 *Del. Code* §§ 1198(7) & (11); *see also id.* at § 1201; *cf. Delaware*, 507 U.S. at 503 (stating that "the **holder**'s legal obligations . . . define[] the escheatable property at issue.") (emphasis added).  This question is one of state law and in no way implicates any federal law.

9.   Second, Defendants assert that there is a "substantial question whether—under federal common law—outstanding balances on gift cards are a 'debt' actually subject to unclaimed property laws."  D.I. 1 at ¶ 18.  The alleged issue of "debt" and the federal priority

4

rules is a proverbial "red herring." States, not the federal courts, determine what property, either tangible or intangible, is subject to escheat under any given state's escheat laws. *See Delaware*, 507 U.S. at 497, 500-01. The State's laws do not limit escheatable property to "debt." *See* 12 *Del. Code* § 1198(11) (defining "property" as "personal property . . . of every kind or description, tangible or intangible, in the possession or under the control of a holder, as hereinafter defined" including "amounts received in consideration for gift certificates which are unredeemed"). 12 *Del. Code* 1198(11).

10.     Third, Defendants argue that unincorporated businesses created under Delaware law (*i.e.*, the "Defendant Delaware LLCs") should not be subject to the State's escheat laws if their principal place of business is outside of the State. As Defendants concede, this is another matter that has been left to the states absent congressional action, of which there has been none. *See* D.I. 1 at ¶ 11. The State's AUPA applies to all businesses "created" under Delaware law or doing business in the State. *See* 12 *Del. Code* § 1198(7) (defining "holder" to include "every entity incorporated or created under the laws of this State," except an "owner").

11.     No claim in the Complaint that is related to the State's AUPA requires the determination of a federal question. For the State to prevail on an abandoned property claim, it must establish only that the Delaware Defendants are "holders" of "abandoned property" *as defined by the State's AUPA*. *See* 12 *Del. Code* §§ 1198, 1199. The Defendants' purported federal questions are merely hypothetical defenses to the claims asserted in the Complaint; they are legally erroneous and, in any event, do not give this Court subject matter jurisdiction. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and *ignore* potential defenses.") (emphasis added); *St. Joe Co. v. Transocean Offshore Deepwater Drilling*

*Inc.*, 774 F. Supp. 2d 596, 603 (D. Del. 2011) ("A federal defense, or the anticipation of such defense in the complaint, is *irrelevant* in the well-pleaded complaint analysis.") (emphasis added).

12.     In sum, the Complaint asserts no claim under federal common law.  No federal question need or should be resolved.  Thus, the Court should summarily remand this case to the Superior Court of the State of Delaware in and for New Castle County for lack of subject matter jurisdiction, and award the State and the Plaintiff-Relator their respective attorneys' fees and costs associated with Defendants' improper removal pursuant to 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").

## III.     STATEMENT OF FACTS

Plaintiff-Relator William French worked for Defendant CardFact and stored its business records in his basement.  D.I. 1-1 (Complaint) at ¶ 12.  After leaving CardFact, he filed a DFCRA suit in Delaware Superior Court (under seal), alleging the Defendants willfully conspired to violate Delaware's AUPA.  D.I. 1-1 at ¶ 1-8.  He provided the State the required Disclosure Statement, along with numerous supporting documents.  After the State's Department of Justice conducted an investigation, the State intervened, and the case was unsealed.  D.I. 1-4.

The Complaint alleges that the Defendants "schemed to deprive the State of Delaware of hundreds of millions of dollars due to the State under the Abandoned Property Law."  D.I. 1-1 at ¶ 1.  Defendant CardFact, now owned by Defendant Card Compliant, originated the scheme: "CardFact identified potential clients by finding companies that sold gift cards and were incorporated in a state, such as Delaware, that defined abandoned property to include the value of unredeemed gift cards."  *Id.* at ¶ 64.  CardFact marketed its "card services" as a "turnkey" solution to companies' obligations under the unclaimed property laws of every state, *id.* at ¶ 69,

and told clients that all they needed to do was to sign a contract with CardFact stating that it was the holder of their unclaimed property, pay a nominal fee, and the clients would instantly have no reporting or escheat obligations regarding unredeemed gift cards. *Id*. at ¶¶ 66-70.

CardFact formed shell entities in Ohio and Florida where the abandoned property laws do not define abandoned property to include the value of unredeemed gift cards. *Id*. at ¶ 6. CardFact then approached the Delaware Defendants and informed them that they were violating the State's AUPA. D.I. 1-1 at ¶¶ 64, 67, 69. The key selling points CardFact stressed in marketing its contracts were: (1) that clients could carry on their gift card business without making any changes and (2) that they could continue to retain possession, custody, and control over the money they collected from selling gift cards – even as CardFact was purporting to hold that money in Ohio or Florida. *Id*. at ¶ 65. CardFact told clients:

> CardFact will not change how you run your business. Your Company can use the same vendors for processing, printing and fulfillment. Your Company *always manages the cash proceeds from gift card sales*. . . .
>
> Retailer manages cash from gift card sales at all times. No change is required in gift card processor or operation of program. . . .
>
> Proceeds from the sale of gift cards *stay in retailer bank accounts*. The retailer also keeps the float. . . .
>
> No change [is] required to [your] operations.

*Id.* (emphasis added). Thus, under CardFact's scheme, gift card sellers "could continue to sell gift cards and keep the money from each sale. They could issue the cards, hold the money from gift card sales, and recognize any unredeemed gift card monies as revenue." *Id*. at ¶ 66.

The agreements typically say CardFact "issued" the gift cards and is the "holder" of unredeemed value of gift cards going back five years (or more) before the contracts were signed. *Id*. at ¶¶ 82, 84. CardFact neither inquired into the extent of this so-called "historical liability" nor required payment for the alleged "debt" to card owners CardFact was allegedly assuming

7

under the contracts.  D.I. 1-1 at ¶ 84.  The Delaware Defendants merely had to pay CardFact an annual fee.  *Id*. at ¶ 5.  When Defendants stop paying the annual fees, the contracts provide that liability for the many millions in debt CardFact was allegedly responsible for would shift back to the Delaware Defendants, without CardFact paying anything.  *Id*. at ¶¶ 76, 86.

The Complaint alleges that the CardFact contracts are a web of lies: the contracts falsely state that CardFact is responsible for manufacturing, marketing and selling the gift cards, falsely state that CardFact issues gift cards, and falsely state that CardFact receives and holds money from unredeemed gift cards.  *Id.* at ¶ 7.  Thus, the contracts between the Delaware Defendants and CardFact are mere shams that fail to transfer any obligations under Delaware's AUPA from the Delaware Defendants to the CardFact shell entities in Ohio or Florida.  *Id*. at ¶ 60.

The Complaint asserts that because the contracts with the Delaware Defendants fail to give CardFact "possession, custody and control" over the unredeemed value of gift cards, the Delaware Defendants remain obligated under—and are in violation of—the State's AUPA.

## IV.   **ARGUMENT**

### A.   STANDARD OF REVIEW ON A MOTION TO REMAND

Defendants may remove cases from state courts only when "the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  Federal courts "are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (internal quotation marks omitted).  The Supreme Court has instructed that a federal court must "presume[] that a cause lies outside [its] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (internal citations omitted); *see also Batoff v. State Farm Insurance Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (removing party carries a "heavy burden of persuasion").

### 1.      Strict Judicial Scrutiny Of This Removal Is Required

"Judicial scrutiny is especially important in the context of removal, where considerations of comity play an important role." *Veneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 618 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mgf.*, 545 U.S. 308, 313-14 (2005) (explaining importance of maintaining federal-state balance). Accordingly, "[t]he removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987)).

"[T]he importance of such scrutiny is at its zenith where, as here, the suit [is being prosecuted] by a State itself, as 'the claim of sovereign protection from removal' in such circumstances 'arises in its most powerful form.'" *In re Standard & Poor's Rating Agency Litig.*, 13-MD-2446 JMF, -- F. Supp. 2d ---, 2014 WL 2481906, at *8 (S.D.N.Y. June 3, 2014) (quoting *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012)). Here, the assertions in the Complaint and the State's intervention establish that the State is seeking to vindicate sovereign interests in enforcing state laws of escheat and fraud on the State. "[D]isposition of abandoned property is a function of the state, a sovereign exercise of a regulatory power over property and the private legal obligations inherent in property." *Delaware*, 507 U.S. at 501-02. (internal quotations omitted).

Such "strict construction of the right of removal" also "makes good sense," as "[a]n order denying a motion to remand a case to state court is ordinarily not appealable until after a final judgment or order is filed in the case." 16 James Wm. Moore et al., *Moore's Federal Practice* § 107.05 (3d ed. 2012). *Cf. New York v. Shinnecock Indian Nation*, 686 F.3d 133, 136 (2d Cir.

9

2012) (vacating a judgment, after nine years of litigation and trial, for lack of subject-matter jurisdiction, where the district court had denied remand).

### 2. Jurisdiction Is Determined Under The Well-Pleaded Complaint Rule

Removal jurisdiction must be "determined by reference to the well-pleaded complaint" rule. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). That rule "provides that federal jurisdiction exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Where, as here, the removing parties do not allege diversity jurisdiction, the Court's original jurisdiction must be based upon an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim is based on federal law when (1) federal law creates the cause of action, or (2) the plaintiff's right to relief necessarily depends on the resolution of a substantial, disputed question of federal law. *Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983); *see also Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).

Federal question jurisdiction is *not* determined by the removing parties' characterizations of the complaint or any defenses that are raised in removal papers. *Beneficial Nat'l Bank*, 539 U.S. at 6; *Caterpillar Inc.*, 482 U.S. at 393 ("[A] case may not be removed to federal court on the basis of a federal defense."). Rather, under the "well-pleaded complaint" rule, plaintiffs are entitled to remain in state court if the operative allegations in the complaint do not, on their face, affirmatively allege a federal claim. *Id.*

### B. THE CLAIMS ASSERTED IN THE COMPLAINT ARE NOT CREATED BY AND DO NOT "ARISE UNDER" FEDERAL COMMON LAW

As the Supreme Court most recently explained, a case can "arise under" federal law in two ways. *Gunn*, 133 S. Ct. at 1064. "Most directly, a case arises under federal law when federal law creates the cause of action asserted. As a rule of inclusion, this 'creation' test admits

of only extremely rare exceptions, and accounts for the vast bulk of suits that arise under federal law." *Id.* (internal citations omitted). The Complaint asserts causes of action only under the DFCRA; there are no federal causes of action asserted in the Complaint. *See* D.I. 1-1 at ¶¶ 411-20.

In removing the case to this Court, Defendants allege that Delaware's claims "arise under" a line of Supreme Court cases establishing priority rules for abandoned property in disputes between States. D.I. 1 at ¶¶ 1, 3-5; *see Delaware v. New York*, 507 U.S. 490 (1993); *Pennsylvania v. New York*, 407 U.S. 206 (1972); *Texas v. New Jersey*, 379 U.S. 674, 675 (1965). Defendants claim the Complaint seeks relief based on a "theory [that] is directly contrary to federal common law, as set forth in the Supreme Court's decisions in the *Texas v. New Jersey* line of cases." D.I. 1 at ¶ 12. Defendants are wrong.

### 1. The State's Claim To Abandoned Property Is Not Created By Federal Law

The so-called "*Texas v. New Jersey* line of cases" cited by Defendants does not create rights to abandoned property. As those cases explain, the "disposition of abandoned property is a function of the state, a sovereign exercise of a regulatory power over property and the private legal obligations inherent in property." *Delaware*, 507 U.S. at 501-02 (quoting *Standard Oil Co. v. New Jersey,* 341 U.S. 428, 436 (1951)) (internal quotations omitted). State law, not federal law, creates the property and defines the legal rights and duties relating to the property, including the debtor-creditor relationship. *Id.* ("In framing a State's power of escheat, we must first look to the law that creates property and binds persons to honor property rights. . . . In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law[.]") (internal citations and quotation marks omitted). In fact, a "State whose laws do not provide for escheat" has no priority rights under federal common law. *Id.* at 499-500. Thus, the State's

claim to the unused balance of abandoned gift card funds asserted in the Complaint was created by the State's AUPA.

Defendants' removal notice relies on only one of the 420 paragraphs in the Complaint. That paragraph merely sets forth the legal framework for the State's AUPA claims.  In its entirety, the paragraph states:

> Pursuant to the Delaware Abandoned Property Law and the United States Supreme Court created "priority rules" among all states' escheat laws, Delaware is entitled to take possession and ownership of the type of property at issue in this case if it has been abandoned, unclaimed, unprotected, or lost for a period of five years.  Delaware is entitled to escheat such dormant property if: (1) it is located in the State of Delaware; or (2) it was owned by a person with a last known address in Delaware; or (3) its owner's identity and/or last known address is unknown and the property is being held by a business incorporated under the laws of the State of Delaware.  *See* Delaware Abandoned Property Law, *id.*, at §§ 1197, 1198, and 1201; *see also, Delaware v. New York*, 507 U.S. 490, 498 (1993); *Texas v. New Jersey*, 379 U.S. 674, 680-682 (1965), *aff'd, Pennsylvania v. New York*, 407 U.S. 206 (1972).

D.I. 1-1 at ¶ 55.

While the Complaint references the so-called "*Texas v. New Jersey* line of cases," it does so only to explain the priorities by which the Supreme Court decides suits between states with competing claims to abandoned property.  Defendants argue, on the basis of this one paragraph, that "[t]he centrality of the federal common law to Plaintiff's (*sic*) claims is clear from the face of the Complaint."  D.I. 1 at ¶ 5.  It has long been established, however, that conclusions of law and references to potential federal defenses in a Complaint must be disregarded when determining whether removal jurisdiction exists.  *See Gully v. First Nat. Bank*, 299 U.S. 109, 112-13 (1936) (Cardozo, *J.*) ("Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a

12

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

The paragraph on which Defendants rely is a statement of law, not an operative part of the Complaint. *Iqbal*, 556 U.S. at 678. No facts are even mentioned. *See* D.I. 1-1 at ¶ 55. The statements and citations in the paragraph merely anticipate and refute possible defenses, and are irrelevant to the Court's jurisdictional analysis. *See Franchise Tax Bd.*, 463 U.S. at 11; *St. Joe Co.*, 774 F. Supp. 2d at 603 ("A federal defense, or the anticipation of such defense in the complaint, is irrelevant in the well-pleaded complaint analysis.").

### 2.      No Right Or Immunity Created By Federal Law Is An Element Of The Asserted Cause Of Action

No element of the claims asserted in the Complaint under the DFCRA requires the determination of a federal question. For the Plaintiffs to prevail on the basis of the claims asserted in the Complaint, they must establish only that the Delaware Defendants are "holders" of "abandoned property" as defined by the State's AUPA. *See* 12 *Del. Code* § 1198. To show this, the Plaintiffs must prove that the contracts the Delaware Defendants entered into with the purported card issuers do not give the purported card issuers "possession, custody and control" of the unredeemed value of gift cards. 12 *Del. Code* § 1198(7). These are all questions of state law.

Defendants fail to identify even one element of the claims asserted in the Complaint that requires resolution of a federal question. Rather, to manufacture federal jurisdiction where none exists, Defendants assert as fact certain legal conclusions they will undoubtedly raise as defenses in the suit. Specifically, Defendants claim that the purported card issuers "issued" the gift cards and are the "debtors" with respect to the unredeemed value of those gift cards. *See* D.I. 1 at ¶¶ 13-14. The Complaint, however, asserts the exact opposite of what Defendants claim: namely,

that the contracts at issue are mere shams, that the purported card issuers have nothing to do with issuing, manufacturing, or marketing gift cards, and that they never have possession, custody, or control over the unredeemed value of gift cards.  D.I. 1-1 at ¶ 7, 60.  Rather it is the Delaware businesses that sell and redeem gift cards and are the ones who are always in possession, custody and control of abandoned property in the form of unredeemed gift cards.  *Id.* at ¶ 60.  Under the State's AUPA, the Delaware businesses *had a known legal obligation* to report and transfer that property to the State.  *Id.*

Defendants contend, however, that this theory of liability "is directly contrary to the federal common law, as set forth by the Supreme Court in the "*Texas v. New Jersey* line of cases."  D.I. 1 at ¶ 12.  Defendants posit that:

> [i]f, under federal common law reflected in the 'priority rules' referenced in the Complaint, Delaware has no right to take custody of the not-yet-used balances on the gift cards at issue and that right rests in a different State, then no amounts were due—or could have been due—under the Delaware Abandoned Property Law, and there could be no violation of the DFCRA.

D.I. 1 at ¶ 6.  In other words, Defendants claim that if a court were to accept *their* version of the facts (contrary to what is alleged in the Complaint), then federal jurisdiction exists, because the priority rules give another state superior rights.  But removal jurisdiction cannot be based on "facts" not pleaded in the Complaint or an alleged defense raised in the removal papers.  *See Gully*, 299 U.S. at 112-13; *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914); *Franchise Tax Bd.*, 463 U.S. at 11; *St. Joe Co.*, 774 F. Supp. 2d at 603.

In any event, the "*Texas v. New Jersey* line of cases" makes clear that one state's laws do not negate the escheat claims of another state.  *See, e.g.*, *Texas*, 379 U.S. at 682.  Rather, the only thing the "*Texas v. New Jersey* line of cases" establishes is a method for determining which state's claim to escheat takes priority when there are competing claims.  Defendants have not identified any other state with a competing claim to escheat the property at issue here.  Instead,

their hypothetical is premised on a state with no laws concerning escheat of that particular type of property.  In such instances, however, those states plainly have no priority interest.  *See Delaware*, 507 U.S. at 499-500.

But even if there were a state with a competing claim, Delaware would not be foreclosed from escheating the property.  It would simply become vulnerable to a claim under the State's AUPA or a suit by that other state.  *See Texas*, 379 U.S. at 682 (holding that "the State of corporate domicile should be allowed to . . . retain[] the property for itself only until some other State comes forward with proof that it has a superior right to escheat") (emphasis added); *see Delaware*, 507 U.S. at 509 (same).  Thus, the claim asserted in the Complaint is not "directly contrary to" Supreme Court precedent; it is *entirely supported* by Supreme Court precedent.

Defendants are free to raise the priority rules in defense of any claim advanced by the State in Delaware state court.  But that hypothetical defense provides no basis for removal jurisdiction.  *See Gully*, 299 U.S. at 112-13; *Taylor*, 234 U.S. at 75-76; *Franchise Tax Bd.*, 463 U.S. at 11; *St. Joe Co.*, 774 F. Supp. 2d at 603 ("A federal defense, or the anticipation of such defense in the complaint, is irrelevant in the well-pleaded complaint analysis.").

### C. THE ALLEGEDLY DISPUTED AND SUBSTANTIAL QUESTIONS OF FEDERAL LAW ARE ACTUALLY STATE LAW QUESTIONS

"[W]here a claim finds its origins in state rather than federal law," there is a "special and small category" of cases in which "arising under" jurisdiction may still lie.  *Gunn*, 133 S. Ct. at 1064.  "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Id.* at 1065; *see also Grable*, 545 U.S. at 314.

15

Defendants claim there are three "actually disputed and substantial questions of federal common law" that should be addressed by a federal court.  D.I. 1 at ¶ 3; *see also id.* at ¶¶ 12, 18, 20.  First, Defendants assert that to resolve whether the State may escheat the property at issue, the Court must determine who the "debtor" is – the purported card issuers or the Delaware businesses that "hold" the property.  *Id.* at ¶ 12.  Second, Defendants contend that the property at issue may not be "debt" in the first place, in which case Defendants have no liability to the State at all.  *Id.* at ¶ 18.  Third, Defendants argue that it is a question of federal law whether the State can apply its AUPA to entities other than corporations, such as the Defendant Delaware LLCs. *Id.* at ¶ 20.  None of these issues are questions of federal law; they are questions of Delaware law.  Moreover, the State's AUPA provides all the answers.  *See* 12 *Del. Code* §§ 1197, 1198, and 1201.

### 1.    A "Holder" Of An Unredeemed Value On A Gift Card Is Liable To The State

Defendants' first purported federal question is whether "Retailers' [*i.e.*, the Delaware businesses'] alleged possession of gift card funds makes them—rather than the actual issuer of the cards—the 'debtor' for purposes of the second priority rule."  D.I. 1 at ¶ 12.  As explained above, "[the Supreme Court's] rules regarding interstate disputes over competing escheat claims cannot be severed from the law that creates the underlying creditor-debtor relationships." *Delaware*, 507 U.S. at 500, 503.  The State's AUPA defines a "holder"—not a "debtor"—of abandoned property as "any person" having "possession, custody or control of the property of another person."  12 *Del. Code* § 1198(7).

Subject only to the superior right of escheat of another state, such holders must deliver escheatable abandoned property to the State.  12 *Del. Code* at § 1201; *see Texas*, 379 U.S. at 678-79.  Defendants have identified no other state with a superior claim to escheat the unclaimed

value of gift cards held by the Delaware business "holders."  But if some state did claim a superior right to Delaware's, that claim would be resolved through the claims process established in the State's AUPA, *see* 12 *Del. Code* § 1206, or—if disputed by the State—it would fall under the Supreme Court's original and exclusive jurisdiction, *see* 28 U.S.C. § 1251(a), and would not create removal jurisdiction in this court.

###     2.     Escheatable Property Is Not Limited To "Debt"

Second, Defendants claim retailers who sell gift cards "have no 'debt' or legal obligation to pay cash to the owners of the unredeemed gift cards" because the cards represent "promises to provide goods or services," not to pay cash.  D.I. 1 at ¶ 18.  They assert that federal common law should prevent the State (and every other state) from requiring the holders of unclaimed property in the form of gift cards from escheating the cash value of those unclaimed gift cards to the State. *Id.* at ¶ 18.  In other words, Defendants ask this Court to declare the unclaimed property laws of the vast majority of states to be contrary to federal common law so that Defendants can convert their liability for hundreds of millions of dollars in unclaimed gift card balances into revenue. *Cf. Texas*, 379 U.S. at 680 ("these debts owed by Sun are not property to it, but rather a liability, and it would be strange to convert a liability into an asset").

Defendants cite no federal or other authority that limits the reach of abandoned property laws to "debts."  The State's AUPA defines abandoned property to include "credits" and "all other liquidated choses in action of whatsoever kind or character."  12 *Del. Code* § 1198(11). Moreover, the State's AUPA *expressly prohibits* any practice that amounts to "private escheat." 12 *Del. Code* § 1210. Thus, to the extent that Delaware businesses are "holders" of balances on gift cards that have been unredeemed for the requisite period of dormancy, they have a known legal obligation under the State's AUPA to report and escheat that property to the State.  *Id*. at § 1201.

Defendants claim the State has no right to escheat the property at issue because its laws do not determine what the "debt" is. They point to the Supreme Court's statement, "First, we must determine the precise debtor-creditor relationship as defined by ***the law that creates the property at issue.***" D.I. 1 at ¶ 12 (quoting *Delaware*, 507 U.S. at 499) (emphasis added), to suggest that the state of incorporation of the shell card issuer entities determines what the "debt" is . D.I. 1 at ¶ 12. Even if the Defendants were correct (they are not), the issue is not one for this Court to decide. First, the argument is (at best) a defense, and so not part of the well-pleaded Complaint. Second, the issue would arise only if another state made a competing claim for the abandoned property.  Defendants identify no state with a competing claim to escheat the gift card property held by the Delaware businesses.  And if such a competing claim were made, and if the claim was not resolved by reference to the State's AUPA, that dispute would fall under the Supreme Court's exclusive and original jurisdiction and could not properly be brought in this Court. *See* 28 U.S.C. § 1251(a).

### 3.     Unincorporated Delaware Businesses Are Liable For Escheat To The State

Third, Defendants claim it is a federal question whether the State can apply its AUPA to limited liability entities other than corporations, such as the Defendant Delaware LLCs.  *Id.* at ¶¶ 20-21.  Defendants assert that some states have adopted the Uniform Unclaimed Property Acts of 1981 and 1995, which make an unincorporated entity's principal place of business the determinant of liability for abandoned property.  D.I. 1 at ¶ 20; *see* Uniform Unclaimed Property Act (1995) § 1(4) (defining "[d]omicile" as "the State of the principal place of business of a holder other than a corporation") (*available at* http://www.uniformlaws.org/shared/docs/unclaimed%20property/uupa95.pdf) (See page A6 of the Appendix).

18

But as Defendants concede, "*these laws do not establish federal common law*." D.I. 1 at ¶ 20 (emphasis added). They establish *state* law, but only for states that have adopted one of the uniform laws. The State has not adopted those either of them. For purposes of escheat, the State's AUPA defines "holder" as "any person that has possession, custody or control over" abandoned property "and includes . . . *every [] legal entity incorporated or created by Delaware law*." 12 *Del. Code* § 1198(7) (emphasis added). Indeed, the majority of states have not adopted the uniform rules as of June 22, 2014, and for good reason. *See Enactment Status Map*, located at http://www.uniformlaws.org/Act.aspx?title=Unclaimed Property Act (identifying 36 states that have not adopted the acts) (An Adobe print of the map is attached as page A51 of the Appendix.). As the Supreme Court explained in rejecting a "principal place of business" priority rule for corporations, such a rule "would raise in every case the sometimes difficult question of where a company's 'main office' or 'principal place of business' or whatever it might be designated is located," whereas giving second priority to the place of incorporation "has the obvious virtues of clarity and ease of application." *Texas*, 379 U.S. at 379-80. Imposing escheat liability on unincorporated entities does not raise a federal question.

### D. THE COURT SHOULD DECLINE DEFENDANTS' INVITATION TO CREATE NEW FEDERAL COMMON LAW

As explained above, unresolved disputes between states fall within the original and exclusive jurisdiction of the Supreme Court. 28 U.S.C. § 1251(a). Nonetheless, Defendants invite this Court to "develop federal common law" of escheat in order to substitute unidentified federal law for a state's law on what constitutes "debt" and who is a "debtor," "owner," and "holder" of abandoned property. D.I. 1 at ¶¶ 11-12, 15, 17-19. Even assuming it could, the Court should decline to do so because it would "disrupt[ ] the federal-state balance approved by Congress." *Gunn,* 133 S. Ct. at 1065.

> [E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.

*Grable*, 545 U.S. at 313-14.   Tellingly, in their Notice of Removal, Defendants cite no case where a federal district court has asserted federal question jurisdiction over a state's claim to escheat.   Similarly, Defendants cite no case where a district court has applied federal common law to determine the meaning of essential property terms connected to the law of escheat.

Indeed, the Supreme Court has already rejected Defendants' proposals in the clearest terms.   *Delaware*, 507 U.S. at 501-02.   In both *Texas* and *Delaware* the parties asked the Supreme Court to develop a federal common law of abandoned property.   *Id.*   And in both cases the Supreme Court refused.   *Id.*   In *Delaware*, the Court made clear that it would not entertain future proposals to devise rules relating to abandoned property:

> We have repeatedly declared our unwillingness either to decide each escheat case on the basis of its particular facts or to devise new rules of law to apply to ever-developing new categories of facts.   To craft different rules for the novel facts of each case would generate so much uncertainty and threaten so much expensive litigation that the States might find that they would lose more in litigation expenses than they might gain in escheats.   If the States are dissatisfied with the outcome of a particular case, they may air their grievances before Congress.   That body may reallocate abandoned property among the States without regard to this Court's interstate escheat rules.

*Delaware*, 507 U.S. at 510. (internal quotations and citations omitted).

## V.   <u>CONCLUSION</u>

Defendants have not and cannot meet their burden of showing that any claim asserted in the Complaint arises under federal common law.   This Court therefore lacks subject matter jurisdiction over this case.   The Court should summarily remand this case to the Superior Court of the State of Delaware in and for New Castle County, and award the Plaintiffs their respective fees and costs associated with Defendants' improper removal pursuant to 28 U.S.C. § 1447(c).

Dated:  June 30, 2014

Respectfully submitted,


/s/ Stuart M. Grant
Stuart M. Grant (No. 2526)
Mary S. Thomas (No. 5072)
Justin K. Victor (No. 5705)

Of Counsel:

Reuben A. Guttman
**GRANT & EISENHOFER P.A.**
1920 L Street, N.W., Suite 400
Washington, DC  20036
Telephone: (202) 386-9500
Facsimile: (202) 386-9505

**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE  19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100

*Attorneys for Plaintiff-Relator*

Douglas R. Sprong
Christopher A. Hoffman
**KORIEN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Thomas E. Brown (No 3278)
Edward K. Black (No. 5302)
Stephen G. McDonald (No. 4806)
**STATE OF DELAWARE**
**Delaware Department of Justice**
820 North French Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 577-8400

*Attorneys for Plaintiff-Relator*

*Attorneys for Plaintiff State of Delaware*